IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CLEARONE COMMUNICATIONS, INC., <br><br> Plaintiff, <br><br><br> vs. <br><br><br> ANDREW CHIANG; JUN YANG; LONNY BOWERS; WIDEBAND SOLUTIONS, INC.; VERSATILE DSP, INC.; and BIAMP SYSTEMS CORPORATION, <br><br> Defendant. | ORDER <br> AND <br> MEMORANDUM DECISION <br><br> Case No. 2:07-CV-37-TC |

Following the return of the jury's verdict finding Defendants Andrew Chiang, Jun Yang, Lonny Bowers, WideBand Solutions, Inc., Versatile DSP, Inc., and Biamp Systems Corporation liable on all claims,[1] Plaintiff ClearOne Communications, Inc. filed its Motion for Permanent Injunction, Exemplary Damages, and Entry of Final Judgment (Dkt # 1302). In its Motion, ClearOne seeks exemplary damages, pre-judgment interest, entry of a final judgment, and leave to file and enforce the judgment in foreign jurisdictions.[2] For the reasons discussed below, the court grants in part and denies in part ClearOne's Motion.

---

[1]In previous orders throughout this acrimonious litigation, the court has recounted the factual background and will not repeat it here except when necessary to explain its decision.

[2]ClearOne also sought a Permanent Injunction, which the court recently issued in a separate order. (See Apr. 8, 2009 Order & Mem. Dec. (Dkt # 1524); Permanent Inj. (Dkt # 1525).) This order addresses the remainder of relief sought by ClearOne.

**A.**     **Entry of a Final Judgment**

The Defendants oppose the entry of a final judgment because, as the case now stands, all issues have not been resolved. Specifically, on March 8, 2008, United States Magistrate Judge David Nuffer issued an order (see Dkt # 766) granting ClearOne's motion to consolidate this case (Dkt # 716) with <u>ClearOne Communications, Inc. v. Yang et al.</u>, Case No. 2:07-CV-832. In that case, ClearOne asserted copyright infringement claims, which, because of the consolidation, are now pending in this case. They are the only unresolved claims left in the consolidated cases.

For the reasons set forth during the March 13, 2009 hearing on ClearOne's motion for entry of final judgment, the court vacates the March 8, 2008 order (Dkt # 766) consolidating the two cases. With that ruling, all issues in this case have been resolved and entry of final judgment is appropriate.

**B.**     **Amount of the Final Judgment**

1.     <u>Preemption</u>

The jury found that the Defendants misappropriated ClearOne's trade secret, called the Honeybee Code. (Special Verdict (Dkt # 1286) Questions 3a-3d.) ClearOne's complaint and other pleadings, and the evidence at trial, show clearly that the state law claims of breach of fiduciary duty against Dr. Yang and Mr. Chiang are based on their theft of the Honeybee Code. (See, e.g., Compl. (Dkt # 1) at p. 17 ("The duties owed by these Defendants included, among other things, the duty to preserve the property and confidential and trade secret information of the Plaintiff . . . .").) Consequently, the claim for breach of fiduciary duty is preempted. See <u>Betts Corp. v. Panduit Corp.</u>, 108 F. Supp. 2d 968, 972 (N.D. Ill. 2000) (holding that because the plaintiff's claim for breach of fiduciary duty "simply constitute[d] allegations of a

2

misappropriation of trade secrets," the claim was preempted).

For the reasons set forth above, and in light of the law cited above, the court vacates the following portions of the jury verdict and damage awards that are based on ClearOne's breach of fiduciary duty claims: Special Verdict (Dkt # 1286) Questions 8, 9, 16, 17, 18, 19; Special Verdict Re: Punitive Damages Against Andrew Chiang (Dkt # 1289); and Special Verdict Re: Punitive Damages Against Jun Yang (Dkt # 1290).

     2.    <u>Prejudgment Interest</u>

ClearOne contends that it is entitled to prejudgment interest on the damage awards. Defendants argue that an award of prejudgment interest is not appropriate because the damage awards were based on assumptions about ClearOne's lost profits.[3]

Utah law governs whether ClearOne is entitled to prejudgment interest. <u>Atlantic Richfield Co. v. Farm Credit Bank of Wichita</u>, 226 F.3d 1138, 1156 (10th Cir. 2000). Under Utah law, the test for determining whether awarding prejudgment interest is appropriate is set forth by the Utah Supreme Court in <u>Smith v. Fairfax Realty, Inc.</u>, 82 P.3d 1064 (Utah 2003), as follows:

> Where the damage is complete and the amount of the loss is fixed as of a particular time, and that loss can be measured by facts and figures, interest should be allowed from that time . . . and not from the date of judgment. On the other hand, where the

---

[3]In support of its argument, ClearOne submitted a declaration of Richard Hoffman, ClearOne's damages expert (who also testified during trial) calculating prejudgment interest. (See Decl. of Richard S. Hoffman Jr., attached as Ex. E to Pl.'s Mem. Supp. Mot. Perm. Inj., Exemplary Damages, & Entry of Final J. (Dkt # 1294).) Defendants have moved to strike Mr. Hoffman's declaration. (See WideBand Defs.' Mot. Strike Decl. of Richard S. Hoffman, Jr. (Dkt # 1420); Biamp's Notice of Joinder (Dkt # 1494).) Because the court finds, based on Utah law and evidence presented during trial, that ClearOne is not entitled to prejudgment interest, the motion to strike is denied as moot.

damages are incomplete or cannot be calculated with mathematical accuracy, such as in the case of personal injury, wrongful death, defamation of character, false imprisonment, etc., the amount of the damages must be ascertained and assessed by the trier of fact at the trial, and in such cases prejudgment interest is not allowed.

Id. at 1069 (internal citations omitted).  Recently, the Utah Court of Appeals noted that its "review of Utah's caselaw indicates that our appellate courts have stated a presumption against awarding prejudgment interest for equitable claims because of the lack of mathematical certainty."  Iron Head Constr., Inc. v. Gurney, 176 P.3d 453, 456 (Utah Ct. App. 2008) (internal citations omitted).

Applying these principles here is not easy.  The WideBand Defendants (Mr. Chiang, Dr. Yang, Mr. Bowers, WideBand Solutions, Inc., and Versatile DSP, Inc.) correctly point out that Mr. Hoffman's damage figures expressed at trial rested upon "a number of disputed assumptions."  (WideBand Defs.' Mem. Resp. Mot. Permanent Inj., Exemplary Damages, & Entry Final J. (Dkt # 1413) at 39.)

Mr. Hoffman testified during trial that ClearOne lost $1,912,000 in profits that it otherwise would have earned if Biamp had not ended its contract with ClearOne.  (Oct. 27, 2008 Trial Tr. (Dkt # 1353) at 202; Trial Ex. 374.)  Mr. Hoffman calculated that WideBand made $951,000 from its sales to Biamp of technology that incorporated ClearOne's trade secret, and Biamp made $694,000 from its sales of the misappropriated technology.  According to Mr. Hoffman, the last two figures comprised unjust enrichment damages. (Oct. 27 Tr. at 200, 210-11, 238; Trial Ex. 374.)

In arriving at these conclusions, Mr. Hoffman did make several assumptions.  For example, he assumed "that transactions between ClearOne and Biamp would have happened just

like they had always happened under the license agreement that existed just before Biamp started buying from Wideband." (Oct. 27 Tr. at 203.) He also "assumed that ClearOne would have made every sale to Biamp for this number, this lost profits number ClearOne would have sold to Biamp instead of Wideband [selling to Biamp]. . . . The exact same number of channels." (Id. at 239.)

The WideBand Defendants point to the trial testimony of Derk G. Rasmussen, their damages expert, who challenged many of Mr. Hoffman's conclusions. Responding to Mr. Hoffman's opinion that ClearOne would have made every sale to Biamp that WideBand did, Mr. Rasmussen testified that historically, WideBand's sales of its technology were much higher than ClearOne's sales. (Oct. 30, 2008 Trial Tr. (Dkt # 1356) at 28.) According to Mr. Rasmussen, because of the significant differences between the ClearOne and WideBand products, Mr. Hoffman's reliance on his calculation of the number of sales WideBand made to Biamp was incorrect. (Id. at 28-29.) Mr. Rasmussen first pointed out that WideBand sold its product at about half the price that ClearOne sold its product, which, in Mr. Rasmussen's view, was "a significant problem[.]" (Id.) Mr. Rasmussen next described various technological differences between the two products, such as the number of DSP (digital signal processing) computer chips needed for the WideBand product (one) and the ClearOne product (two). (Id. at 32-33.)

The case of Anesthesiologists Associates of Ogden v. St. Benedict's Hospital, 852 P.2d 1030 (Utah Ct. App. 1993), rev'd on other grounds, 884 P.2d 1236 (Utah 1994), is instructive. There, the plaintiff (a professional corporation of anesthesiologists) sued the hospital for breach of contract. Although the trial court awarded damages to the plaintiff after holding that the hospital had breached the contract, it denied the plaintiff's request for prejudgment interest. The

plaintiff argued that "because its expert based his estimate of lost profits on mathematically derived projections of revenues, its damages were fixed and ascertainable so as to justify an award of prejudgment interest." Id. at 1042. ClearOne makes a similar argument: "The jury based its damages awards on the testimony and damages figures supplied by ClearOne's expert witness, which were based on the actual financial records provided by the Defendants." (Pl.'s Resp. to WideBand Defs.' Opp'n to ClearOne's Mot. (Dkt # 1488) at 76 (emphasis in original).)

The court declines to adopt ClearOne's position for the same reasons articulated by the Utah Court of Appeals in Anesthesiologists Associates, affirming the trial court's decision to deny prejudgment interest, persuasively reasoned that

> [a]lthough Associates' records of past revenues and expenses allowed damages to be calculated with a greater degree of certainty than would otherwise have been possible if this case involved a new business, . . . the very nature of lost future profits injects an air of uncertainty and speculation into the calculation of damages. . . . The factfinder in this case had to assess expert testimony and apply its best judgment to determine a fair amount for lost profits. While the expert's estimates were a reliable enough basis for awarding damages, the assumptions used to arrive at those estimates are by no means the only way to arrive at Associates' damages.

Anesthesiologists Assocs., 852 P.2d at 1042 (internal citations omitted.)

Because Mr. Hoffman's estimate of ClearOne's lost profits was based on various assumptions, the court concludes that an award of prejudgment interest in this case is not appropriate. Similarly, Mr. Hoffman's estimate of unjust enrichment damages, although reliable enough to provide a basis for awarding damages, lacks the mathematical certainty needed to justify an award of prejudgment interest.

3.    Exemplary Damages

The jury found, by clear and convincing evidence, that each Defendant had willfully and

maliciously misappropriated ClearOne's trade secret. (See Special Verdict Questions 6a, 6b, 6c, 6d, 6e, 7.)  ClearOne contends that, in light of the jury's findings, the court should award exemplary damages against the Defendants.  The Defendants disagree, arguing, among other things, that the evidence at trial does not support such awards.

The Utah Uniform Trade Secrets Act (UUTSA) provides that "[i]f willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under Subsection (1) [which provides for actual loss and unjust enrichment damages]."  Utah Code Ann. § 13-24-4(2) (2005) ("exemplary damage provision"). The court's decision whether to award such damages is discretionary.

There appears to be no reported decision in Utah interpreting the UUTSA's exemplary damage provision.  But the comment to Uniform Trade Secrets Act § 3(b), which was the model for Utah's exemplary damage provision, provides some guidance to the courts.  The authors of the commentary state that "[s]ection 3(b) . . . follows federal patent law in leaving discretionary trebling to the judge even though there may be a jury, compare 35 U.S.C. Section 284 (1976)." Uniform Trade Secrets Act § 3(b) cmt. (2005).

Under 35 U.S.C. § 284 (the federal patent statute cited in the comment to § 3(b) of the Uniform Trade Secrets Act), federal courts have articulated several factors to consider when determining whether to award exemplary damages.  Courts have focused most of their analyses on three factors, which are: (1) whether the defendant deliberately copied the ideas or design of another; (2) whether the defendant held a good faith belief that the conduct did not infringe on another's rights; and (3) the defendant's behavior as a party to the litigation.  See Read Corp. v. Portec, Inc., 970 F.2d 816, 826-27 (Fed. Cir. 1992) ("The paramount determination in deciding to

grant [exemplary damages] and the amount thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances."), abrogated in part on other grounds by Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995); Bott v. Four Star Corp., 807 F.2d 1567, 1572 (Fed. Cir. 1986); Lam, Inc. v. Johns-Manville Corp., 668 F.2d 462, 475 (10th Cir. 1982). But additional factors have been identified and applied in decisions addressing whether to award exemplary damages: (4) the defendant's size and financial condition; (5) the closeness of the case; (6) the duration of the defendant's conduct; (7) remedial action taken by the defendant; (8) the defendant's motivation for harm; and (9) whether the defendant attempted to conceal the misconduct. Read Corp., 970 F.2d at 826-27; Bott, 807 F.2d at 1572; Lam, Inc., 668 F.2d at 475.

Considering the jury's verdict and the factors above, the court concludes, as explained in more detail below, that an award of exemplary damages against each of the Defendants is appropriate.

### a.    *The WideBand Defendants*

Certainly the jury's verdict against each of the WideBand Defendants (which the court finds was well supported by the evidence) satisfies the requirement of UUTSA's exemplary damages provision that the trade secret misappropriation be willful and malicious. See Utah Code Ann. § 13-24-4(2).

As for the factors set forth above, the jury's finding of willful misappropriation establishes the first factor (i.e., that there was deliberate copying of the trade secret). Furthermore, Mr. Makovicka's testimony on this issue is compelling. He compared the ClearOne code with the WideBand code and found evidence of literal copying of the ClearOne

source code (including copying of a unique design flaw and unique headers and programmer descriptions). Moreover, the evidence showed that secret elements of the ClearOne Honeybee Code were found on the WideBand Defendants' computers and that users of those computers attempted to hide that fact.

The evidence showed that none of the WideBand Defendants held a good faith belief that the copying and use of ClearOne's Honeybee Code trade secret was proper (the second factor). The most egregious instances of a lack of good faith are found in the behavior of Jun Yang and Andrew Chiang, but the other WideBand Defendants (Lonny Bowers, WideBand Solutions, and Versatile[4]) are no less culpable.[5] The court provides just a few of the more outstanding examples.

In particular, Jun Yang signed a non-disclosure agreement (NDA) with his employer, which expressly stated that any algorithm or computer code he helped to develop was the property of Dr. Yang's employer, that such technology should be kept strictly confidential, that disclosure of such confidential information could irreparably harm his employer, and that he was not to use or disclose it for any purpose other than for his employer's business. Yet, as the jury found, he knowingly breached that contract, and the duty of good faith and fair dealing that inhered in the NDA. Furthermore, the jury found that Dr. Yang breached a fiduciary duty owed to his employer and did so in a manner that the jury believed warranted a $ 4,000,000 punitive

---

[4]Dr. Yang is the majority owner of Versatile DSP, which was set up to receive royalty payments from WideBand Solutions, including licensing fees earned through WideBand's license of the misappropriated code to Biamp. (Oct. 24, 2008 Trial Tr. at 228-30.)

[5]Evidence at trial showed that WideBand Solutions was a small, closely-held company run by the three individual WideBand Defendants (Andrew Chiang, Lonny Bowers, and Jun Yang). (See, e.g., Oct. 24, 2008 Trial Tr. at 163-64, 227; Oct. 27, 2008 Trial Tr. at 92-94.)

damage award.

Similarly, Mr. Chiang breached his fiduciary duty to ClearOne (he was a former owner and officer of ClearOne's predecessor) by taking confidential materials after signing an Asset Purchase Agreement that transferred those materials to another entity, and by using such information and technology in products that directly competed with ClearOne. For that breach, the jury assessed $3,000,000 in punitive damages against him. Although those two punitive damage awards have been vacated for legal reasons, they nevertheless indicate the jury's dim view of the conduct and attitude at WideBand.

The WideBand Defendants' behavior during the litigation (the third factor) compounds their problems. Although this litigation was acrimonious and drawn out on both sides, events and behavior of the WideBand Defendants during the litigation (there are too many to list but a few examples will be provided) weigh in ClearOne's favor. First, the magistrate judge held that Dr. Yang lied during his deposition. (See Mar. 9, 2008 Mem. Decision & Order Granting in Part Mot. for Sanctions (Dkt # 79).) Second, the evidence found on the WideBand Defendants' computers was only recovered after an order compelling them to provide a third-party forensic computer expert access to the computers after the litigation was well under way. Similarly, Mr. Chiang, late in the litigation, made a "sudden discovery" of materials he took in violation of the asset purchase agreement. His explanation on the stand for his late discovery and disclosure of these materials was less than convincing. Third, the court had to enter a preliminary injunction to halt WideBand's intended licensing and transfer of object code at issue in the litigation[6] to

---

[6]That object code was later found to contain the misappropriated trade secret.

non-party Harman Music Group even after ClearOne instituted the lawsuit against the WideBand Defendants. (See Oct. 30, 2007 Preliminary Inj. Order (Dkt # 572).) Fourth, the court held "show cause" hearings to determine whether certain WideBand Defendants had violated two different court orders. (The issues raised in those hearings have not yet been resolved.) Fifth, the magistrate judge sanctioned the WideBand Defendants for discovery abuses by awarding approximately $36,000 in attorneys' fees to ClearOne. (See Feb. 17, 2009 Order Awarding Fees in Connection With Mot. for Sanctions (Dkt # 1462); Mar. 9, 2008 Mem. Decision & Order Granting in Part Mot. for Sanctions (Dkt # 79).) In short, their behavior during the litigation has been less than desirable.

Of the remaining factors, the most compelling are that the WideBand Defendants attempted to conceal their misconduct (as noted above) and that the case was not a close call. The evidence amply supported the jury's verdict that the WideBand Defendants willfully and maliciously misappropriated ClearOne's trade secret. See, e.g., Construction Tech., Inc. v. Lockformer Co., Inc., 781 F. Supp. 195, 200-01 (S.D.N.Y. 1991) (holding that exemplary damages were appropriate under 35 U.S.C. § 285 because, among other things, the jury made a finding of willful patent infringement "which was amply supported by the record including evidence that the defendant attempted to misappropriate plaintiff's trade secrets," the defendants' conduct during litigation showed bad faith and attempts to delay, and the jury awarded plaintiff "punitive damages with respect to other aspects of the conduct of the defendants").

Special weight is placed on the jury's verdict. The jury carefully weighed the evidence, and its factual findings (which were based on clear and convincing evidence) should be respected. See, e.g., Midwest Underground Storage, Inc. v. Porter, 717 F.2d 493, 501 (10th Cir.

1983) (noting "traditional sanctity of jury verdicts"); Learning Curve Toys, Inc. v. Playwood Toys, Inc., 342 F.3d 714, 721 (7th Cir. 2003) (in trade secret case, court noted that it should not "second-guess the jury's view of contested evidence"); Jurgens v. CBK, Ltd., 80 F.3d 1566, 1572 (Fed. Cir. 1996) (holding that evidence sufficient to support jury's finding of willful infringement may not be re-weighed by district court); Chicago, Rock Island & Pac. R.R. v. Speth, 404 F.2d 291, 295 (8th Cir. 1968) (holding that "sound reasons of public policy" support well-settled rule that jury verdict must not be undermined by second-guessing jury's deliberative process). Particularly compelling is that fact that the jury found willful and malicious misappropriation and awarded not only substantial compensatory damages to ClearOne but substantial punitive damages as well. As ClearOne notes in its memorandum supporting its motion for exemplary damages, the jury "endorsed the concept of awarding twice the total amount of damages as a remedy for egregious conduct on a claim. In particular, in determining the appropriate punitive damages for Jun Yang's and Andrew Chiang's breaches of fiduciary duty, the jury doubled the [compensatory] damages." (Dkt # 1294 at 13 (internal citations omitted).)

For all the reasons set forth above, and considering all of the circumstances set forth in the record, an award of exemplary damages would accomplish the public objective of punishing and deterring malicious conduct. Behrens v. Raleigh Hills Hosp., Inc., 675 P.2d 1179, 1186 (1983). Accordingly, the court holds that ClearOne is entitled to exemplary damages from each of the WideBand Defendants in an amount equal to two times the compensatory damages (and unjust enrichment damages, if applicable) as set forth below in the "Calculation of Damages" section.

b. *Biamp*

As with the WideBand Defendants, the jury found by clear and convincing evidence that Biamp had willfully and maliciously misappropriated ClearOne's trade secret. Biamp nevertheless contends that there is no evidentiary basis for awarding exemplary damages, and so it asks the court to exercise discretion under the UUTSA and decline to grant ClearOne's request.

An inspection of the evidence reveals that the jury could reasonably conclude that Biamp deliberately ignored many red flags in the pursuit of profit. Accordingly, contrary to Biamp's contention, the court finds that substantial direct and circumstantial evidence supports the jury's finding that Biamp willfully and maliciously misappropriated ClearOne's trade secret.[7]

In 2002, and again in 2004, and throughout Biamp's relationship with the WideBand Defendants, Biamp was aware of important facts giving Biamp knowledge or reason to know that the WideBand Defendants had stolen ClearOne's AEC (acoustic echo cancellation) technology. For example, Biamp, who was very interested in obtaining AEC technology for use in its products, knew that (1) acoustic echo cancellation was extremely difficult to do, that many skilled engineers had tried and failed, and that there were very few engineers who were good at

---

[7]Although not expressly stated in its opposition papers, Biamp essentially challenges the sufficiency of evidence under Federal Rule of Civil Procedure 50(b) (allowing motion for judgment as a matter of law and motion for new trial), but Biamp waived its right to do so because it did not present a Rule 50(a) motion at the close of evidence. Marshall v. Columbia Lea Reg'l Hosp., 474 F.3d 733, 738-39 (10th Cir. 2007). Even if the court were to review the sufficiency of the evidence under the standards applicable to a Rule 50(b) motion, Biamp would not succeed because the evidence amply supports the jury's finding of willful and malicious misappropriation, as those terms are defined in the jury instructions. The same analysis (and conclusion) would apply to Biamp's contention that the evidence does not support the jury's finding that Biamp did not make a "material and prejudicial change of position related to the trade secret before it knew or had reason to know that the information was acquired through a confidential relationship[.]" (Special Verdict Question No. 5.)

developing marketable AEC technology; (2) Dr. Yang's only experience with AEC was at Old

ClearOne and/or Gentner (ClearOne's predecessors); (3) other than the Old ClearOne

Speakerphone or other Old ClearOne/Gentner products, none of the WideBand Defendants had

ever worked on an AEC product; (4) Dr. Yang had signed a non-disclosure or confidentiality

agreement with Old ClearOne/Gentner; (5) Dr. Yang and Mr. Chiang claimed they could develop

a new or custom algorithm in a few short months; (6) by contrast, Biamp thought it might take

two years to develop its own AEC; (7) the September 5, 2005 e-mail from Lonny Bowers to Matt

Czyzewski at Biamp (Trial Ex. 66) essentially stated that the algorithm being licensed by

WideBand was the same as in the Old ClearOne Speakerphone and ClearOne micpad, and was

also in the WideBand WC301 product and the Biamp AEC2w technology; (8) Dr. Yang had

worked on Old ClearOne technology at Old ClearOne; (9) engineers who work on technology are

exposed to trade secrets; (10) Gentner had AEC trade secrets in its Gentner D.E.C. code;

(11) Gentner acquired Old ClearOne for its "award winning" speakerphone and microphone pad;

(12) Biamp did not know whether ClearOne was using the AEC from the "award winning"

conference phone and microphone pad in its Gentner D.E.C. products; and (13) Biamp knew

enough to be concerned about avoiding any "taint" from Dr. Yang's association with the Gentner

D.E.C. product.  Despite all of the above, Biamp did not ask even the most basic due diligence

questions when dealing with the WideBand Defendants.  Furthermore, having reviewed the

testimony of Biamp's witnesses (particularly the cross-examination of Ralph Lockhart and Matt

Czyzewski), the court finds that the jury (who has the sole responsibility to assess witness

credibility) reasonably found by clear and convincing evidence that Biamp's behavior was willful

and malicious.  (See examples of evidence adduced at trial, as set forth in ClearOne's Response

to Biamp's Opposition Memorandum (Dkt # 1489) at 38-39.)

Additionally, having considered the nine factors set forth above, the court finds that exemplary damages are appropriate. Biamp deliberately ignored numerous warning signs suggesting that the AEC technology offered by WideBand was not WideBand's to sell. Given all the facts presented to Biamp at the time, it could not have held a good faith belief that its use of the WideBand code was valid. Biamp earned $1,565,000 in profit from illegal use of ClearOne's trade secret by purchasing the WideBand technology at half the price offered by ClearOne and then selling the technology at the same price it charged when dealing with ClearOne. It also appears that Biamp's market share increased as a result of the sale of the AEC2W technology which contained ClearOne's trade secret. Finally, as stated before, the issue of trade secret misappropriation, and whether such misappropriation was willful and malicious, was not a close call.

For all the reasons set forth above, and considering the totality of circumstances, an award of exemplary damages against Biamp is appropriate to punish Biamp for ignoring its due diligence duties in order to profit at the expense of a competitor and to send a message deterring other companies from engaging in similar conduct. Accordingly, the court holds that ClearOne is entitled to exemplary damages from Biamp in an amount equal to the sum of its compensatory and unjust enrichment damages as described below in the "Calculation of Damages" section.

### 4. Calculation of Damages

According to ClearOne's damages expert, Richard Hoffman, ClearOne was damaged in the amount of $3,557,000.00. (See Trial Ex. 374.) Mr. Hoffman broke that amount down into three categories: $1,912,000.00 representing ClearOne's lost profits; $694,000.00 representing

the amount of unjust enrichment gained by Biamp through its misappropriation of the trade

secret; and $951,000.00 representing the amount of unjust enrichment gained by WideBand

Solutions through its misappropriation of the trade secret.  (Id.; see also Oct. 27, 2008 Trial Tr. at

195-280 (testimony of R. Hoffman).)

ClearOne is not entitled to double recovery for the same loss.  See Cook Assocs., Inc. v.

Warnick, 664 P.2d 1161, 1168 (Utah 1983) (holding that although pleading alternative theories

of liability is permitted, court may not enter judgment on more than one theory (such as tort

action and breach of contract) for the same conduct, "since that would represent a double

recovery"); Brigham City Sand & Gravel v. Machinery Ctr., 613 P.2d 510, 511 (Utah 1980).

Indeed, as the parties worked with the court to fashion the special verdict form, all agreed that the

jury would be asked to determine damages for each cause of action and that the court would sort

out damage awards later to avoid double recovery.  (See Oct. 31, 2008 Tr. of Jury Instr. Conf.

(Dkt #1358) at 31-35, 51-53;  see also Special Verdict at 5 (instructing jury to "[a]ssess

compensatory damages for each claim separately and without regard to whether you have already

awarded the same compensatory damages for another claim.  The court will prevent double

recovery by making sure that any compensatory damage awards are not added together.").)

Although ClearOne prevailed on multiple theories, the liability on those separate claims

was based on the same actions.  Furthermore, the evidence only supports an award of

$3,557,000.00, as set forth in Mr. Hoffman's "Summary of Damage Calculations" (Trial Ex.

374).  For example, there was no evidence that Mr. Bowers, Dr. Yang, Mr. Chiang, or Versatile

were unjustly enriched by any measurable amount.  Accordingly, the court does not enter

judgment against those Defendants for unjust enrichment damages.

The court has calculated the damages for each Defendant considering the principles and facts set forth above. The court finds that all of the Defendants are jointly and severally liable for the $1,912,000.00 in lost profits shown at trial. In addition, WideBand Solutions is liable for $951,000.00 in unjust enrichment damages, and Biamp is liable for $694,000.00 in unjust enrichment damages. To determine exemplary damages, the court divided $1,912,000.00 by six (representing the six Defendants), which equals approximately $318,666.00. That number was added to the unjust enrichment damages award, if applicable. Then the court multiplied that sum by two for each of the WideBand Defendants and multiplied it by one for Biamp to arrive at the amount of exemplary damages for each Defendant. The exact figures are set forth below.

## C.    Request for Leave to Register Final Judgment in Foreign Jurisdictions

ClearOne seeks an order from the court under 28 U.S.C. § 1963 that will allow it to register and enforce the final judgment in other jurisdictions. The statutory provision provides, in relevant part that

> [a] judgment in an action for the recovery of money or property entered in any . . . district court . . . maybe registered by filing a certified copy of the judgment in any other district . . . when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown.

28 U.S.C. § 1963 (emphasis added).

ClearOne contends, as support for its motion, that the "Defendants in this action are not from Utah[.]" (Pl.'s Mem. Supp. Mot. Permanent Inj., Exemplary Damages, & Entry of Final J. (Dkt # 1294) at 17.) Given what other courts have interpreted as "good cause," ClearOne's statement is not sufficient to establish good cause. See, e.g., Associated Bus. Tel. Sys. Corp. v. Greater Capital Corp., 128 F.R.D. 63, 68 (D.N.J. 1989) ("good cause can be shown 'upon a mere

showing that the defendant has substantial property in the other [foreign] district and insufficient in the rendering district to satisfy the judgment.'") (quoting Siegel, *Commentary to 1988 Revision*, 28 U.S.C. 1963 (West Supp. 1989)) (modification in original); Schreiber v. Kellogg, 839 F. Supp. 1157, 1162 (E.D. Penn. 1993) (citing Assoc. Bus. Tel. & *Commentary to 1988 Revision* for same proposition); Republic Bank v. AMTEC Precision Prods., Inc., No. 1:06-CV-112-TS, 2008 WL 410130 at *1 (D. Utah Feb. 12, 2008) ("While the Tenth Circuit has not spoken regarding what constitutes good cause in this setting, other courts have stated that the 'good cause requirement may be satisfied if the judgment debtor has substantial property in a foreign district and insufficient property in the rendering district to satisfy the judgment.'") (quoting Schreiber).  See also Hicks v. The Cadle Co., No. 04-CV-02616-ZLW-KLM, 2009 WL 189938 at *1 (D. Colo. Jan. 27, 2009) (noting that to satisfy good cause requirement of § 1963, plaintiff need not "conclusively prove that Defendants have assets in another jurisdiction" but must base assertion of asset location on something more than speculation).

     For the reasons set forth immediately above, ClearOne's request for an order under 28 U.S.C. § 1963 is DENIED WITHOUT PREJUDICE.  If ClearOne provides good cause, as defined above, the court will reconsider the request.

**D.**     <u>**Miscellaneous Post-Trial Motions**</u>

     In addition to ClearOne's Motion for Entry of Permanent Injunction, Exemplary Damages, & Entry of Final Judgment, the following post-trial motions filed by *pro se* Defendant Lonny Bowers are also pending before the court: March 12, 2009 Motion for New Trial, Relief

From Judgment, and Remittitur (Dkt # 1497);[8] March 31, 2009 Motion for Full Access to

Plaintiff's Proposed Findings of Fact and Conclusions of Law as Right of Due Process (Dkt

# 1508); April 1, 2009 Motion for Full Access to the Expert Report and Trial Testimony of

Thomas Makovicka (Dkt # 1512); April 6, 2009 Emergency Motion to Set Aside the Jury

Verdict (Dkt # 1518); and April 17, 2009 Motion for Reconsideration of Permanent Injunction

(Dkt # 1528).[9]  For the reasons set forth below, all of Mr. Bowers' motions are DENIED.

    1.   Motion for New Trial, Relief From Judgment, and Remittitur

In his motion, Mr. Bowers contends that he was deprived of due process and so is entitled

to a new trial.  Specifically, he contends that the damage award was excessive and that "events

that transpired at trial as well as before and after the trial, [were] fueled by passion and prejudice"

by the court, Plaintiff's counsel, and the jury.  He further asserts that "[b]ecause the trial judge

failed to recuse herself as required by 28 U.S.C.A. § 455, Defendants are entitled to a new trial."

(Bowers' Mot. for New Trial (Dkt # 1497) at 7.)  Mr. Bowers seeks relief from "any judgments

obtained in the previous trial, relief from any restraining orders granted to Plaintiffs [sic] by

Judge Campbell and Magistrate Nuffer in the said trail [sic] and entitled to have the remanded

case tried by a different judge, and, at the very least, [is] entitled to remittur [sic]."  (Id. at 11.)

Apart from the fact that Mr. Bowers' purported motion under Rule 50 is premature (no judgment

has yet been entered), the court finds that it lacks merit.

---

[8]Mr. Bowers filed the motion on behalf of himself and WideBand Solutions, Inc.  But because he is not a licensed attorney, he may only represent his own interests, not those of the corporation.  Accordingly, the court treats his motion as pertaining to him only.

[9]Two other motions, both filed by ClearOne, are also pending, but the court has determined that those motions should be addressed in a separate order.

First, the damages award is supported by the evidence. Any disagreement on that issue may be resolved on appeal to the Tenth Circuit Court of Appeals.

Second, Mr. Bowers is not only seeking a new trial but also recusal by the court.[10] The vast majority of his motion focuses on what he perceives to be judicial bias and personal interest warranting recusal under 28 U.S.C. § 455.

To the extent Mr. Bowers relies on the court's adverse rulings as evidence of lack of impartiality, he has not established bias under Section 455. "Adverse rulings alone are insufficient to show bias." Thompson v. Ramsey, 28 Fed. Appx. 831, 837, 2001 WL 1475065 at **6 (10th Cir. Nov. 21, 2001) (citing Willner v. University of Kansas, 848 F.2d 1023, 1028 (10th Cir. 1988)); see also Liteky v. United States, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion"). In addition, the injunction to which Mr. Bowers refers falls within the category of "adverse rulings."

Mr. Bowers further alleges that the court had an improper personal financial interest in the outcome of the trial. His allegations are not supported by the evidence or law.

As for judicial statements he contends were prejudicial, such statements were not made during trial and so could not have influenced the jury. The same concept applies to any actions by the court outside the presence of the jury, particularly post-trial hearings and rulings. Further, any allegedly inappropriate statement made by Plaintiff's counsel during closing argument was harmless.

---

[10]The court notes that Mr. Bowers has not filed any motion for recusal during these proceedings, unless one counts the motion currently pending before the court, which motion is titled Motion for New Trial, Relief from Judgment, and Remittitur.

For the foregoing reasons, Mr. Bowers' Motion for New Trial, Relief From Judgment, and Remittitur is denied.

 2.    Motions for Full Access to Certain Sealed Portions of the Record

Mr. Bowers contends that, as a *pro se* defendant, he has been denied due process because the court prevented his access to information designated "confidential" or "highly confidential" based on a stipulated protective order. The information he seeks comes in two forms. The first is the expert report and trial testimony of ClearOne's expert witness, Thomas Makovicka. The second is ClearOne's Proposed Findings of Fact and Conclusions of Law, from which ClearOne redacted all confidential and highly confidential information before sending it to Mr. Bowers.

Mr. Bowers unpersuasively contends that he was denied due process. Significantly, Mr. Bowers' legal counsel (Mr. Bowers was represented by counsel for the vast majority of the litigation) had full access to confidential and highly confidential information throughout the litigation, including during trial, and briefing and argument of important post-trial issues. That confidential information included the expert report and trial testimony of Mr. Makovicka. Mr. Bowers' counsel not only had access but had the opportunity to use it (and did use it) in the WideBand Defendants' brief defending against ClearOne's post-trial Motion for a Permanent Injunction, Exemplary Damages, and Entry of Final Judgment. The information was also available to Mr. Bowers' counsel during the court proceedings concerning the post-trial motion.

As for ClearOne's Proposed Findings of Fact and Conclusions of Law, the court finds no prejudice in the fact that confidential and highly confidential information was redacted before the document was sent to the WideBand Defendants. At ClearOne's suggestion, the court gave all of the parties (including the WideBand Defendants when they were represented by counsel) the

opportunity to submit proposed findings of fact and conclusions of law, noting that such findings were not required and probably would not be relied on because the trial transcript and exhibits (all of which were fully available to Mr. Bowers' counsel during the relevant times) would form the basis for any ruling by the court. And as predicted during the March 13, 2009 hearing, the court relied on the record (trial transcripts and exhibits) to issue its decision.[11]

In short, under the circumstances, the court finds no prejudice, and no violation of due process. Accordingly, Mr. Bowers' two motions for full access to those materials are denied.

### 3. Emergency Motion to Set Aside Jury Verdict

The court has reviewed Mr. Bowers' Emergency Motion to Set Aside the Jury Verdict (Dkt # 1518), along with his "Supplemental Motion to Emergency Motion to Set Aside the Jury Verdict," which unconvincingly allege a fraud upon the court by ClearOne and which attempt to re-argue the evidence and challenge other rulings in the case. The court finds that Mr. Bowers' motions have no merit, and, accordingly, they are denied.

---

[11]Furthermore, as set forth in an earlier order, none of the WideBand Defendants has authority to view "confidential" or "highly confidential" information defined in the protective order. (See Feb. 24, 2009 Order at 1-2, 8-9, 11.) The court restricted their access out of necessity after their third set of attorneys conditionally withdrew (with the court's permission) and the individual WideBand Defendants became *pro se*. (The corporate entities, who remain unrepresented, are in violation of the rule requiring entities to be represented by a licensed attorney.) The problem could be quickly resolved if a licensed attorney made an appearance on behalf of the WideBand Defendants because that attorney would have full access to the protected information upon agreement to the terms of the protective order. At any rate, the court issued the order to prevent the redacted information (which related to or defined the trade secret) from being viewed or disclosed by the very parties who were found to have willfully and maliciously misappropriated the trade secret. Of particular concern was evidence received during a show-cause hearing (post-trial) suggesting that confidential information was being disclosed by Mr. Bowers or one of his co-defendants in violation of the protective order (the "show cause" issue is not yet resolved).

4.      Motion for Reconsideration of Permanent Injunction

The court finds this motion (Dkt # 1528) to be without merit, and, accordingly, denies it.

## ORDER

For the foregoing reasons, the court ORDERS as follows:

1.      The March 8, 2008 Memorandum Decision (Dkt # 766) consolidating this case
with Case No. 2:07-CV-832 is HEREBY VACATED.  The motion to dismiss with prejudice
copyright claims against the WideBand Defendants (Dkt # 1167 in this case) shall become part of
the now unconsolidated case number 2:07-CV-832.

2.      Plaintiff ClearOne Communications, Inc.'s Motion for Permanent Injunction,
Exemplary Damages, and Entry of Final Judgment (Dkt # 1302) is GRANTED IN PART AND
DENIED IN PART.  In particular:

        a.      The court VACATES the following portions of the jury verdict and
damage awards that are based on ClearOne's breach of fiduciary claims:  Special Verdict (Dkt
# 1286) Questions 8, 9, 16, 17, 18, 19;  Special Verdict Re: Punitive Damages Against Andrew
Chiang (Dkt # 1289); and Special Verdict Re: Punitive Damages Against Jun Yang (Dkt # 1290).

        b.      ClearOne is not entitled to pre-judgment interest.

        c.      The Defendants are liable to ClearOne for damages as set forth below:

                i.      Andrew Chiang is hereby ORDERED to pay the following
damages to ClearOne Communications, Inc.: $1,912,000.00 (jointly and severally with all six of
the Defendants), plus $637,332.00 in exemplary damages, for which he is individually liable.

                ii.     Jun Yang is hereby ORDERED to pay the following damages to
ClearOne Communications, Inc.: $1,912,000.00 (jointly and severally with all six of the

Defendants), plus $637,332.00 in exemplary damages, for which he is individually liable.

             iii.    Lonny Bowers  is hereby ORDERED to pay the following damages to ClearOne Communications, Inc.: $1,912,000.00 (jointly and severally with all six of the Defendants), plus $637,332.00 in exemplary damages, for which he is individually liable.

             iv.    WideBand Solutions, Inc.  is hereby ORDERED to pay the following damages to ClearOne Communications, Inc.: $1,912,000.00 (jointly and severally with all six of the Defendants), plus $951,000 (individual liability for unjust enrichment), plus $2,539,332.00 in exemplary damages, for which it is individually liable.

             v.    Versatile DSP, Inc.  is hereby ORDERED to pay the following damages to ClearOne Communications, Inc.: $1,912,000.00 (jointly and severally with all six of the Defendants), plus $637,332.00 in exemplary damages, for which it is individually liable.

             vi.    Biamp Systems Corporation is hereby ORDERED to pay the following damages to ClearOne Communications, Inc.: $1,912,000.00 (jointly and severally with all six of the Defendants), plus $694,000.00 (individual liability for unjust enrichment), plus $1,012,666.00 in exemplary damages, for which it is individually liable.

    3.    The Defendants' Motion to Strike the Declaration of Richard S. Hoffman, Jr. (Dkt # 1420) is DENIED AS MOOT.

    4.    ClearOne's request for leave to file and enforce the Final Judgment in foreign jurisdictions, as set forth in 28 U.S.C. § 1963, is DENIED WITHOUT PREJUDICE.

    5.    The following post-trial motions filed by *pro se* Defendant Lonny Bowers are DENIED:  March 12, 2009 Motion for New Trial, Relief From Judgment, and Remittitur (Dkt # 1497);  March 31, 2009 Motion for Full Access to Plaintiff's Proposed Findings of Fact and

Conclusions of Law as Right of Due Process (Dkt # 1508); April 1, 2009 Motion for Full Access to the Expert Report and Trial Testimony of Thomas Makovicka (Dkt # 1512); April 6, 2009 Emergency Motion to Set Aside the Jury Verdict (Dkt # 1518); and April 17, 2009 Motion for Reconsideration of Permanent Injunction (Dkt # 1528).

6.      The court defers ruling on the following motions, which shall remain pending despite entry of final judgment on the central issues in this case: ClearOne's Ex Parte Motion for Entry of Partial Judgment and Order of Contempt (Dkt # 1504); ClearOne's Ex Parte Motion to Reschedule Hearing on Orders to Show Cause (Dkt # 1506).

5.      The Clerk of the Court is directed to enter FINAL JUDGMENT in this case in accordance with Federal Rule of Civil Procedure 58(b)(2) and the court's ruling above.

DATED this 20th day of April, 2009.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
Chief Judge

25